CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

SEP 27 2010

JULIA C. DUDLEY, CLERK
BY: _Tan Coleman_
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

---

JUDY L. MOON, *individually and*
*as Executor of the Estate of*
*Leslie W. Moon,*

                                        *Plaintiff,*

v.

BWX TECHNOLOGIES, INC., *et al.,*

                                        *Defendants.*

---

CIVIL NO. 6:09cv00064


MEMORANDUM OPINION


JUDGE NORMAN K. MOON

---

This matter is before the court on plaintiff's motion to remand (docket no. 21),

Magistrate Judge Michael F. Urbanski's Report and Recommendation ("R&R") (docket

no. 30), and plaintiff's objections thereto (docket nos. 33 and 37).

Under 28 U.S.C. § 636(b)(1), the parties may file a written objection to the

magistrate judge's report. Upon timely objection, the court must review *de novo* those

portions of the R&R to which the objecting party has raised specific objections, but the

court has the authority to accept, reject, or modify the R&R in whole or in part.[1] 28

U.S.C. § 636(b)(1). General objections that merely reiterate arguments presented to the

magistrate judge lack the specificity required under Rule 72, and have the same effect as

a failure to object, or as a waiver of such objection. *See Veney v. Astrue*, 539 F. Supp. 2d

---

[1] The magistrate judge made his review in accordance with Fed. R. Civ. P. 72(b) and 28
U.S.C. §§ 636(b)(1) and (3). Rule 72(b) "implements the statutory procedures [in §
636(b)(1)(c)] for making objections to the magistrate's proposed findings and
recommendations." Fed.R.Civ.P. 72 advisory committee's notes.

1

841, 845 (2008). The responsibility for a final determination remains with the district court. *Matthews v. Weber,* 423 U.S. 261, 270-271 (1976).

For the reasons set forth below, the magistrate judge's recommendations will be ADOPTED in part and plaintiff's motion to remand will be DENIED in an accompanying Order.

## I.

Plaintiff Judy L. Moon, individually and as executor of the estate of Leslie W. Moon (collectively, "Moon" or "plaintiff"), brings this action to recover on a life insurance policy that she claims was or should have been issued to her late husband, Leslie W. Moon.[2] Leslie Moon was a long time employee of BWX Technologies, Inc. (a subsidiary of defendant McDermott International, Inc.) and its predecessor companies (collectively, "BWX" or "defendants"). During open benefits season in the fall of 2005, Mr. Moon selected a benefits package that included $200,000 in life insurance through BWX's FlexChoice Benefits Program ("FlexChoice"). His benefits selection was confirmed in a statement prepared on November 29, 2005. Subsequently, on December 1, 2005, Leslie Moon was approved for long term disability.[3] At that point, according to FlexChoice's Summary Plan Description, he became ineligible for group life insurance coverage and had to contact Metropolitan Life Insurance Company ("MetLife") within thirty-one days to continue his coverage, which required converting to a personal policy

---

[2] This section is substantially copied from part I of the R&R.

[3] Leslie Moon received short term disability benefits for the six months preceding his qualification for long term disability. His short term disability status did not affect his eligibility for life insurance benefits through the group plan.

and paying premiums directly to MetLife. There is a factual dispute as to whether Leslie Moon was advised by BWX that he had to contact MetLife directly in order to continue his life insurance coverage as a disabled employee. Leslie Moon did not contact MetLife, convert to a personal policy, or make any premium payments to MetLife. Instead, he continued to pay premiums to BWX for his FlexChoice benefits package.[4] On January 13, 2006, he received a second confirmation of his benefits package, which again listed $200,000 in life insurance benefits. The only change to this statement was a $2.52 increase in the cost of long term disability benefits, bringing his total annual cost for all benefits to $3,269.76. Eight hundred and four dollars of that amount was allocated to the annual cost of life insurance.

Leslie Moon died on November 18, 2006. His wife paid BWX $1,173.36, the balance owed on the annual premiums for his FlexChoice benefits package, following his death. BWX accepted the premium payments but did not pay Moon the $200,000 in life insurance benefits, stating that Leslie Moon was ineligible for life insurance coverage through the group plan and failed to convert his active employee life insurance benefit to that of a disabled employee by contacting MetLife as instructed.

In this action initially filed in the Circuit Court for the City of Lynchburg, Moon claims defendants contracted with Leslie Moon to provide benefits, which included $200,000 in death benefits, in exchange for an annual payment of $3,269.76. Moon asserts what she calls "garden variety" state law claims for breach of contract, quasi-

---

[4] Life insurance benefits were only one type of benefits included in the FlexChoice package. The premiums paid were for all benefits, including life insurance, listed on the confirmation statement.

contract, estoppel and breach of fiduciary duty.[5]  Defendants removed this case pursuant to 28 U.S.C. § 1441, asserting this action is preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, thereby creating a federal question under 28 U.S.C. § 1331.  Defendants also filed a motion to dismiss, claiming the confirmation statement Moon relies on does not impose obligations on defendants, Moon has not sued the proper defendants, and that her quasi-contract, estoppel, and breach of fiduciary duty claims are not appropriate in the ERISA context.  Moon moved to remand, arguing the court lacks subject matter jurisdiction over this action because this is not a claim for benefits against an ERISA plan, and Leslie Moon was ineligible to participate in an ERISA-governed life insurance plan at the time of the alleged contract.

Pursuant to Fed. R. Civ. P. 72(b), the magistrate judge entered a report and recommendation concluding that this court should deny plaintiff's motion to remand.  We now review the plaintiff's objections to that report.

---

[5]  It is worth noting that this is the third in a series of lawsuits filed by Moon arising out of the same set of facts.  In both of the first two suits filed in Campbell County Circuit Court, Moon named MetLife as a defendant and claimed Mr. Moon elected to purchase life insurance through the employee group life insurance program, which was insured through MetLife.  The first action was never served and was non-suited by Moon.  Moon did not serve the second action, but it remains pending in circuit court.  In the instant action, Moon does not name MetLife as a defendant and her complaint does not mention ERISA.  Instead she claims Mr. Moon and BWX made an independent contract for death benefits.

## II.

Part II of the R&R correctly and thoroughly sets forth the law governing complete preemption under ERISA, and plaintiff has not raised any specific objections thereto. I therefore adopt part II of the R&R in full and incorporate it here by reference.

It bears repeating that ERISA provides two related, but distinct preemption provisions. State law claims that "relate to" an ERISA plan are preempted under § 514. The effect of preemption under § 514 is not to provide the federal court with jurisdiction, but merely to invalidate state law claims. *Sonoco Products Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370-71 (4th Cir. 2003). Only those state law claims that are "completely preempted" because they fall within the civil enforcement provision of § 502 are removable. *Id.* Therefore, "every state claim completely preempted by § 502 is, *a fortiori*, related to ERISA, but not every state claim related to ERISA under § 514 is completely preempted." *Lancaster v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 958 F. Supp.1137, 1144 (E.D.Va. 1997).

While §§ 502 and 514 of ERISA are distinct, they both further Congress' desire to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc., v. Davila,* 542 U.S. 200, 208-09 (2004). Section 514 is an "expansive preemption provision[] which [is] intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id.* at 208 (internal quotations omitted). Section 502 is "essential to accomplish Congress' purpose . . ." *Id.*; *See also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52 (1987). This court must interpret the law in accordance with Congress' intent. *See Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 8 (1987) ("as in any pre-emption analysis, the purpose of Congress is the ultimate touchstone") (citing

5

*Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747; *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)) (internal quotations omitted). With this in mind, we turn to the plaintiff's objections.

### III.

As the magistrate judge observes, the threshold issue in this case is whether an ERISA plan exists. "In litigation under ERISA, '[t]he existence of a plan is a prerequisite to jurisdiction.'" *Bulls v. Norton Cmty. Hosp., Inc.*, 76 F. Supp. 2d 710, 713 (W.D. Va. 1999). The word "plan" cannot be read out of the statute. *Fort Halifax*, 482 U.S. at 8. ERISA preemption applies when a state cause of action is premised upon the existence of a plan such that "'in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists,'. . . ." *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 378 (4th Cir. 2001) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990)).

The R&R identifies "two plans" which could potentially give rise to the court's subject matter jurisdiction. First is the group life insurance plan in which Leslie Moon enrolled in the fall of 2005 (the "group plan"). The parties agree that the group plan is an ERISA governed plan, although plaintiff's complaint scrupulously avoids the appearance of making claims under that plan. The second is the plan allegedly established (the "benefits agreement") from certain promises defendants made to Leslie Moon, which are outlined in a document styled "2006 Confirmation Statement."

In finding that the benefits agreement is governed by ERISA, the magistrate judge relied on two theories. Under the first theory, as described in part III.A of the R&R, defendants' alleged promises constituted an "informal plan" under the Eleventh Circuit's

test set forth in *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (1982) (*en banc*), and endorsed by a number of courts, including the Fourth Circuit. *See Elmore v. Cone Mills Corp.*, 23 F.3d 855, 861 (4th Cir. 1994); *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 417 (4th Cir. 1993); *Madonia v. Blue Cross & Blue Shield of Va.*, 11 F.3d 444, 447 (4th Cir. 1993); *Bulls*, 76 F. Supp. 2d at 713. *Donovan* holds that a plan under ERISA is established if from the surrounding circumstances, a reasonable person could ascertain (1) the intended benefits, (2) beneficiaries, (3) the source of financing, and (4) procedures for receiving benefits. 688 F.2d 1367, 1373 (11th Cir. 1982).

Under the second theory, as described in part III.B of the R&R, the magistrate judge concluded that even if the alleged promises did not constitute an informal ERISA plan, plaintiff's claim were so intertwined with an acknowledged ERISA plan that the court has jurisdiction over the matter. In reaching his decision, the magistrate judge relied in part on the district court's decision in *Bulls*, 76 F. Supp. 2d at 713. In that case, the court ruled that ERISA provided jurisdiction over an alleged benefits agreement because the agreement was "integrally connected" to a 401(k) plan that was governed by ERISA.

Parts A and B of plaintiff's objections to the R&R criticize the magistrate judge's report in relation to the conclusion that an "informal plan" was established in 2006. Because I conclude, below, that no such plan was established in 2006, no further discussion of plaintiff's objections in that regard is necessary. Part D of plaintiff's objections to the R&R relate essentially to the threshold question of whether a "plan" exists under ERISA. The analysis below is intended to address Moon's objections in that respect. While I reject the magistrate judge's findings insofar as they establish the

existence of an informal plan (part A, *infra*), I accept the finding that Moon's claims are so integrally related to an ERISA plan that jurisdiction is proper (part B, *infra*).

A

The Fourth Circuit adopted the Eleventh Circuit's *Donovan* test in *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 861 (4th Cir. 1994) ("An informal ERISA plan has been established 'if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Id.* (quoting *Donovan*, 688 F.2d at 1372). All other circuits have also adopted the *Donovan* test. *See Grimo v. Blue Cross/Blue Shield*, 34 F.3d 148, 151 (2d Cir. 1994); *Kenney v. Roland Parson Contracting Corp.*, 28 F.3d 1254, 1257-58 (D.C. Cir. 1994) (collecting cases from the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth and Tenth Circuits); *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 12 (7th Cir. 1994).

Plaintiff asks that this court find that the alleged plan in the case at bar is not an ERISA plan under the "ongoing administrative scheme" analysis developed in *Fort Halifax*, 482 U.S. at 9. In *Fort Halifax*, the Supreme Court held that a Maine statute which required employers to provide one time severance payments to employees in the event of a plant closing did not thereby require employers to establish a "plan" under ERISA. The Court relied heavily on the notion that ERISA's preemption provision was intended to minimize the burden that employers would face if they were subject to myriad and conflicting state regulations concerning employee benefit plans. 482 U.S. at 11. Although employers could achieve efficiencies by establishing "a uniform administrative scheme . . . [s]uch a system [would be] difficult to achieve,

however, if a benefit plan [were] subject to differing regulatory requirements in differing States." *Id.* at 9. The Maine statute's "requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." *Id.* at 12. *See also District of Columbia v. Greater Wash Bd. Of Trade,* 506 U.S. 125, 130 n. 2 (1992). Because application of the Maine statute would not trigger any of the concerns animating the preemption provision, the Court held that it did not relate to a "plan."

In declining to give great weight to *Fort Halifax,* the magistrate judge adopted the position of the district court in *Davis v. Old Dominion Tobacco Co., Inc.,* which limited the importance of the *Fort Halifax* analysis to cases concerning severance benefits. 688 F. Supp. 2d 466, 470-71 n.5 (E.D.Va. 2010) ("Where, as here a case does not involve a dispute over severance benefits, the proper inquiry is the broader test set forth in *[Donovan]* which incorporates the 'ongoing administrative scheme' requirement of *Fort Halifax* in the analysis of procedures for applying for and collecting benefits.") But in this regard *Davis* is unsupported by the case law. Moreover, nothing in *Fort Halifax* compels the conclusion that its importance is limited to severance benefits cases. Subjecting employers to state law claims to pension or health benefits presents the same threat to the uniform administration of employee benefits plans as subjecting employers to severance benefits claims. Admittedly, the *Fort Halifax* analysis is directly on-point in severance cases, which by their nature involve "one-time, lump-sum payments." *See Venezuela v. Massimo Zanetti Beverage USA, Inc.,* 525 F. Supp. 2d 781, 792 (E.D.Va. 2007); *Jenkins v. Chesapeake Hardwood Products, Inc.,* 2007 WL 4568974, 1 (W.D.N.C. 2007); *Mullaly v. Insurance Services Office, Inc.,* 395 F. Supp. 2d 290, 295 (M.D.N.C.

2005).  But subsuming the ongoing administrative scheme analysis within *Donovan's*

balancing test dilutes its importance to a degree that is inconsistent with the Supreme

Court's treatment in *Fort Halifax.*

Thus, the question remains how this court should give weight to both the

*Donovan* and the *Fort Halifax* decisions, as they are both applicable law.  I shall treat the

ongoing administrative scheme test as a threshold inquiry, before applying the *Donovan*

test.  *See Cvelbar v. CBI Illinois Inc.,* 106 F.3d 1368, 1378 (7th Cir. 1997) ("We have

determined that the Agreement necessitated . . . an ongoing administrative program.  In

addition . . . a court must determine whether from the surrounding circumstances a

reasonable person could ascertain the intended benefits, beneficiaries, source of

financing, and procedures for receiving benefits.") (quotations omitted); *Cecil v. AAA

Mid-Atlantic, Inc.,* 118 F. Supp. 2d 659, 664 (D.Md. 2000) ("Having decided that an

ongoing administrative scheme is present, the court must determine whether the terms of

the plan are reasonably ascertainable [under *Donovan*].")

Because the Fourth Circuit has not explicitly adopted a means of testing whether

such an ongoing administrative scheme exists, district courts have developed their own

tests, which focus on the amount of discretion which employers must exercise under the

contract or statute alleged to be preempted.  *See Lomas v. Red Storm Entertainment, Inc.,*

49 F. App'x 396, 400-01 (4th Cir. 2002) (unpublished opinion); *Venezuela,* 525 F. Supp.

2d at 790; *Jenkins v. Chesapeake Hardwood Products, Inc.,* 2007 WL 4568974, 1

(W.D.N.C. 2007); *Mullaly,* 395 F. Supp. 2d at 295 (M.D.N.C. 2005).  In  determining

whether an "ongoing administrative scheme" exists, the district court in *Mullaly*

developed a four-part test, examining:

(1) the managerial discretion granted in paying benefits and whether a case-by-case review of employees is needed; (2) whether payments are triggered by a single unique event in the course of business or on a recurring basis; (3) whether the employer must make a one-time, lump-sum payment or continuous, periodic payments; and (4) whether the employer undertook any long-term obligations with respect to the payments.

395 F. Supp. 2d at 295. Viewed independently from the group life plan, the benefits agreement in this case does not appear to require an ongoing administrative scheme. All of the *Mullaly* factors weigh against such a finding.

First, payment under the benefits agreement would be triggered by a readily identifiable event – the death of Leslie Moon. Therefore, the managerial oversight or discretion required to decide whether to pay benefits is slight. *See Venezuela*, 525 F. Supp. 2d at 791 ("[The employer was left] with no discretion to determine (a) whether [plaintiff] was entitled to severance benefits, or (b) the amount of benefits he was to receive . . . . Therefore, the Agreement . . . does not appear to be an employee benefit plan as defined by ERISA.") (alterations in original) (quoting *Lomas*, 49 F. App'x at 400). Second, the payments would be triggered by a single, unique event – again, the death of Leslie Moon. This is similar to the case in *Fort Halifax*, where the payment of severance benefits was tied to the closing of a plant. 482 U.S at 12. *Cf. Mullaly*, 395 F. Supp. 2d at 296 ("[Here] defendant's obligations are recurring as employees are terminated, which necessarily requires some ongoing administration."); *Ebenstein v. Ericsson Internet Applications, Inc.*, 263 F. Supp. 2d 636, 642 (E.D.N.Y. 2003) ("Notably, the Ericsson agreement applies to all employees and was not drafted for a single event such as a plant closing. As such, the plan can reasonably be interpreted as an ongoing commitment on the part of the Company.") Third, this case would require a

one-time, lump-sum payment, as in *Fort Halifax*. Fourth, the duration of BWX's obligations would be limited by Leslie Moon's life span.

For the foregoing reasons, I decline to adopt part III.A of the R&R and find that standing alone, the benefits agreement is not a "plan" within the meaning of ERISA, and cannot therefore be the basis of this court's jurisdiction. As discussed in part B below, however, the benefits agreement cannot properly be viewed in isolation.

## B

Having decided that the benefits agreement does not *per se* constitute an "informal plan" under ERISA, the next issue is whether this court has jurisdiction over plaintiff's claim on a theory that the benefits agreement was "integrally related" to the group life plan, as the R&R concludes in part III.B. Plaintiff objects to this analysis, claiming that the "'integrally related' test formulated by the [magistrate judge] is not a test recognized in the case law." Although I find the use of the phrase "integrally related" confusing, and would prefer different terminology, the principles on which the magistrate judge relied were sound.

Part III.B of the R&R relies heavily on *Bulls v. Norton Cmty. Hosp., Inc.*, 76 F. Supp. 2d 710 (W.D.Va. 1999). There, as in this case, the court had determined that there were two potential "plans" that could give rise to subject matter jurisdiction: a 401(k) plan that was admittedly governed by ERISA, and another alleged plan that arose from the defendant's promises to provide retirement benefits when the 401(k) "ceased operation." 76 F. Supp. 2d at 712. As in this case, the court determined that the defendant's promises did not create an informal plan, yet it concluded that it nonetheless had jurisdiction over the retirement benefits claim. *Id.* at 713. The court reasoned that

"[i]n spite of the plaintiff's assertion that 'the subject of this lawsuit is not the 401-K Plan,' this plan is integrally connected to her claims." *Id.*

From this holding, the magistrate judge adopted the position that since the benefits agreement in this case is "integrally related" to the group plan, removal was proper. In so doing, the R&R borrowed the language of § 514, which provides that ERISA supersedes state laws insofar as they "relate to" an ERISA plan, 29 U.S.C. § 1144(a), to describe complete preemption under § 502. While both sections further the Congressional intent to create a unified system of administration for employee benefits claims, the sections are distinct, and only § 502 provides the basis for removal. (See part II, *supra*, and part II of the R&R).

Nonetheless, the analysis in the R&R remains sound because it draws upon well established principles governing ERISA cases. The animating principle in *Bulls* is the notion that a plaintiff cannot avoid the preemptive force of ERISA merely because she disavows any attempt to enforce rights under an ERISA plan. Congress and the Supreme Court have made clear that ERISA is endowed with "extraordinary pre-emptive power." *Aetna Health Inc., v. Davila*, 542 U.S. 200, 209 (2004) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66 (1990)). Therefore, plaintiffs cannot avoid removal under ERISA by artful pleading. *See, e.g., Fain v. FSC Securities Corp.,* 111 F. Supp. 2d 1039 (N.D. Ill. 2000) (noting that in assessing complete preemption, a court is "not limited to the complaint" but may "look beyond it to assure ourselves that the plaintiff has not by artfully pleading sought to defeat a defendant's right to a federal forum") (quoting *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1487 (7th Cir. 1986) (internal quotation marks omitted). In evaluating complete preemption under § 502, courts should not

"elevat[e] form over substance" and distinguish "between pre-empted and non-pre-empted claims based on the particular label affixed to them." *Davila*, 542 U.S. at 214 (quotations omitted). Read in that light, *Bulls* stands for the proposition that when it is clear from the substance of the complaint that the plaintiff is attempting to vindicate rights that arise out of an ERISA plan, jurisdiction in the federal courts is proper.

The court in *Bulls* notes that its analysis is "similar to cases involving state law preemption where a plaintiff claims that the lawsuit does not involve an existing ERISA plan." 76 F. Supp. 2d at 714 n.4. Although the use of §514 preemption cases to address §502 complete preemption claims may cause some additional confusion, the analogy is sound because both contexts demand that the court look beyond the face of the complaint to the underlying reality of the claims.

In this context-specific inquiry, courts have looked at a number of factors. In *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473 (4th Cir. 1996) (*en banc*), the plaintiff attempted to recover contract damages on the basis of a letter, which set forth long-term disability benefits, that the plaintiff alleged was independent of an ERISA plan. The *en banc* court wrote "we think it very likely that the claim is preempted by ERISA § 514(a), because it seeks to recover benefits of a sort which are already provided by an ERISA plan . . . ." 74 F.3d at 1480. In *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253 (4th Cir. 2005), the court considered a similar claim. Finding no preemption, and distinguishing *Stiltner*, the court wrote:

> First, the substantial differences between the severance provision of [plaintiff's] employment agreement and the terms of the Severance Plan – most notably the significantly greater amount of the benefit promised to [plaintiff] and the absence of any conditions other than termination without cause – make clear that [defendant's] promise to pay [plaintiff] severance operated independently of the Severance Plan. . . Second, there is no indication in the record that severance pay

awarded to [plaintiff] pursuant to his employment agreement would be paid out of funds allocated to the Severance Plan.

404 F.3d at 259 (citations omitted). *See also Crews v. Gen Am. Life Ins. Co.*, 274 F.3d 502, 505 (8th Cir. 2001). Courts have also focused on the extent to which the plaintiff's damages are reliant on an acknowledged ERISA plan. *See Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 10 (2d Cir. 1992); *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1294 (5th Cir. 1989). Still other courts have considered whether the alleged independent agreement refers to or acknowledges an ERISA plan. See *Franklin v. QHG of Gadsden, Inc.*, 127 F.3d 1024, 128 (10th Cir. 1997).

Turning now to this case, I find that despite plaintiff's insistence to the contrary, the record makes clear that plaintiff's claim under the allegedly independent benefits agreement is in substance an attempt to recover under the group life plan. As in *Stiltner,* the plaintiff here is attempting to claim benefits of a type.provided by an acknowledged ERISA plan. 74 F.3d at 1480. Moreover, plaintiff here claims benefits in an amount equal to those denied under the group life plan. *Cf. Gresham,* 404 F.3d at 259. Furthermore, the 2006 Confirmation Statement, which plaintiff proffers in support of her claim that the benefits agreement is independent of the group life plan, does little to help her case. The document refers to a number of different benefits plans under the headings "Plan Type" and "Plan Name." In addition to the plan captioned "Employee Life Insurance" – on which plaintiff rests her claim – it refers to "Anthem BCBS PPO Plus," "Anthem Dental Plus," and "Spectera Vision" among others. The use of these brand-name plans strongly suggests that the document does not create any independently enforceable promises, but merely piggybacks on other plans. Viewed in this context, although the form of the pleadings suggests otherwise, the substance of Moon's claim is

revealed as an attempt to vindicate rights under the group life plan. This court's jurisdiction is therefore proper.

## IV.

Plaintiff's reply brief in support of her motion to remand (docket no. 24) focuses on the claim that Leslie Moon was not a "participant" in an ERISA plan within the meaning of ERISA's civil enforcement provision as interpreted in, *inter alia, Gardner v. E.I. DuPont de Nemours and Co.*, 165 F.3d 18 (4th Cir. 1998) (unpublished opinion). The implication of that claim is that plaintiff lacks standing under ERISA, and that the case should be remanded. In part IV of the R&R, the magistrate judge addressed those arguments and determined that the plaintiff has standing. (docket no. 30) Apparently unsatisfied with the magistrate judge's findings, plaintiff has repackaged her arguments in part C of her objections. (docket no. 33) The court need not review these arguments *de novo. See United States v. Midgette*, 478 F.3d 616, 621-22 (4th Cir. 2007); *Page v. Lee*, 337 F.3d 411, 416 n. 3 (4th Cir. 2003); *Veney v. Astrue*, 539 F. Supp. 2d 841, 845 (2008).

Because much of the magistrate judge's analysis hinged on the determination that an informal ERISA plan was created in 2006, and this court has declined to adopt that conclusion, I also decline to adopt the magistrate judge's analysis in part IV of the R&R with respect to the informal plan theory. Otherwise, having found part IV of the magistrate judge's report to be thorough and correct, I adopt the magistrate judge's findings to the extent consistent with this opinion.

## V. Conclusion

For the reasons set forth above, plaintiff's motion to remand will therefore be DENIED in an accompanying order. The Clerk of the Court is directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this 27th day of September, 2010.

Norman K. Moon
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE