CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUL 07 2011

JULIA C. DUDLEY, CLERK
BY: 
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JUDY L. MOON, individually, and as executor of the estate of Leslie W. Moon<br>                             *Plaintiff,*<br><br>v.<br><br>BWX TECHNOLOGIES, INC., *et al.*<br>                             *Defendants.* | CIVIL ACTION NO. 6:09-CV-00064<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the court upon consideration of Defendants' motion to dismiss pursuant to Rule 12(b)(6) (docket no. 53). Plaintiff[1] seeks to recover for Defendants' failure to pay life insurance benefits under a plan that she alleges was, or should have been issued to her late husband. Defendants assert that the relief sought is not available under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*, and that the complaint must therefore be dismissed. For the reasons that follow, I will grant the motion.

I.

Plaintiff Judy L. Moon is the widow and executor of Leslie Moon ("Mr. Moon"), a one-time employee of defendants Babcock & Wilcox Company, and Babcock & Wilcox Power Generation Group, Inc., predecessor companies to defendant BWX Technologies, Inc. ("BWX"), a subsidiary of defendant McDermott International, Inc. ("McDermott"). Beginning in May or June 2006, Mr. Moon became unable to perform regular full-time work for BWX. As part of an existing benefits package, he received short term disability benefits through the carrier selected

---

[1] Plaintiff's brief uses the plural "plaintiffs" to refer to Judy L. Moon, individually, and as executor of her late husband's estate. However, I will refer to her as "Plaintiff" throughout.

1

by Defendants, for a period of six months, until late November, 2005. As a result of his failing health, Mr. Moon was unable to resume work as of December 5, 2005.

On about January 13, 2006, BWX mailed Mr. Moon an alleged offer to provide certain ongoing benefits in exchange for specified payments. The offer, styled "Your 2006 McDermott Confirmation Statement" ("Confirmation Statement"), confirmed his "selected benefit options effective 01/02/2006 through 12/31/2006." It further contained a table, listing the "Plan Type," "Plan Name," "Coverage Level," and "Annual Employee Cost," pertaining to certain benefits.[2] In relevant part, it indicated that Mr. Moon had selected "Employee Life Insurance" at a coverage level of $200,000, and an annual employee cost of $804.00. It also showed that the total annual cost of benefits, including long-term disability, vision, and personal accident insurance, was $3,269.76.

Plaintiff avers that Mr. Moon accepted the alleged offer by making premium payments to BWX and/or McDermott. In 2006, Mr. Moon and the Plaintiff made seven such payments in the total amount of $2,973.36, representing the prorated annual cost of benefits for the year to the date Mr. Moon died on November 18, 2006. In a letter enclosing a final payment, Plaintiff indicated that she intended to cover the balance due for Mr. Moon's benefits. It is alleged that Defendants accepted all payments, including the final payment, without objection and without advising Plaintiff that life insurance benefits were unavailable.

At all relevant times, Defendants had adopted an ERISA-qualified life insurance plan administered through MetLife for regular, full-time BWX employees (the "MetLife Plan"). However, there is no dispute that after November 30, 2005, Mr. Moon was no longer eligible to

---

[2] Generally, in evaluating a motion to dismiss, the court may not consider extrinsic evidence without converting the motion to a motion for summary judgment. *See Witthohn v. Federal Ins. Co.*, 164 F. App'x 395, * 396-97 (4th Cir. 2006) (unpublished opinion). Nonetheless, a court may consider extraneous materials that are "integral to and explicitly relied on in the complaint." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). There is no dispute that the Confirmation Statement falls within that rule.

participate in the MetLife Plan, since he was no longer an active employee. Plaintiff thus sought to recover under the alleged agreement evidenced by the Confirmation Statement. However, when Plaintiff attempted to collect benefits from Defendants, Defendants denied her claim.

Plaintiff then filed this case in state court, alleging what she termed "garden variety" state law claims for breach of contract, quasi-contract, estoppel, and breach of fiduciary duty. Defendants then removed the case to this court pursuant to 28 U.S.C. § 1441, asserting preemption under ERISA § 502, 29 U.S.C. § 1132. I denied Plaintiff's motion to remand, finding that Plaintiff's attempt to recover under the "allegedly independent benefits agreement [was] in substance an attempt to recover under" the ERISA-governed plan. *Moon v. BWX Technologies, Inc.*, 742 F.Supp.2d 827, 836 (W.D. Va. 2010).

## II.

When state law claims fall within ERISA's civil enforcement provision, § 502, they may be removed to federal court, where they are "converted into federal claims. . . ." *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002). But a state law claim will not survive a motion to dismiss by mere virtue of its removal. *See* 292 F.3d at 195. Rather, "to the extent that state-law claims seek remedies that fall outside the scope of § 502(a), they are rejected as preempted." *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 289-90 (4th Cir. 2003). Thus, Defendants' motion turns on whether Plaintiff's claims state a federal cause of action under ERISA § 502(a).

### A.

Plaintiff's breach of contract claim is sensibly construed as a civil action brought by a beneficiary "to recover benefits due him under the terms of his plan . . ." 29 U.S.C. §

3

1132(a)(1)(B). However, the plan documents [3] show that Mr. Moon's coverage ended when he "cease[d] Active Work as an Employee," meaning that he stopped "performing all of the material duties of [his] job with the Employer where those duties are normally carried out."[4] Moreover, the "Summary Plan Description"[5] states that:

> If, while insured, you become totally disabled and are unable to work, your life insurance coverage will end. However, you may continue life insurance coverage for you and your covered dependents by making payment directly to the insurance company.

There is no dispute that neither Plaintiff nor Mr. Moon made any such payments, and thus that his coverage under the MetLife Plan lapsed. *See* Am. Compl. ¶ 28.

Plaintiff purports to seek recovery not under the MetLife Plan, but under an alleged separate agreement evidenced by the Confirmation Statement. However, I have already determined that that claim is "in substance an attempt to recover" under the MetLife Plan. *Moon*, 742 F. Supp. 2d at 836. And the reasons for that determination remain sound. Plaintiff seeks to recover benefits of a type provided by an acknowledged ERISA plan, in an amount provided for in an acknowledged ERISA plan, in reliance on a Confirmation Statement that on its face appears to impose no independently enforceable duties. *Id.*

Moreover, ERISA requires that a plan be "established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), which "describe[s] the formal procedures by which the plan can be amended." *Coleman v. Nationwide Life. Ins. Co.*, 969 F.2d 54, 58 (4th Cir. 1992) Therefore, "[o]ral or informal written modifications to a plan . . . are of no effect." *Id.* at 59. *See also McCravy v. Metropolitan Life Ins Co.*, ---- F.3d ----, 2011 WL 1833873, at *5 (4th Cir.

---

[3] As with the Confirmation Statement, the plan documents are integral to Plaintiff's claim and are thus proper subjects of consideration at this stage of the litigation. *See, e.g., Colin v. Marconi Commerce Sys. Emps. Ret. Plan*, 335 F. Supp. 2d 590 (M.D.N.C. 2004).
[4] McDermott Incorporated, Your Employee Benefit Plan, (Jan. 1, 2001) (docket no. 54-3).
[5] Summary Plan Description of the Group Insurance Plan for McDermott Incorporated and Participating Subsidiary and affiliated Companies. (Sept. 2002) (docket no. 54-1).

4

2011). The Fourth Circuit has reasoned that a contrary rule would expose a plan to "undefined liabilities" and ultimately redound to the harm of the plan and its beneficiaries. *Elmore v. Cone Mills. Corp.*, 23 F.3d 855, 874 (4th Cir. 1994) (Niemeyer, J., concurring)). "'[E]mployees would be unable to rely on these plans if their expected retirement benefits could be radically affected by funds dispersed to other employees pursuant to' side agreements." *Id.* (quoting *Miller v. Coastal Corp.*, 978 F.2d 622, 625 (10th Cir. 1992). As Plaintiff's contract claim seeks to sidestep the requirements of an ERISA-governed plan by modifying the conditions of coverage, it must therefore fail.

### B.

Plaintiff also seeks to recover under an implied, or quasi-contract theory. As an initial matter, courts generally prohibit a party from recovering in quasi-contract or unjust enrichment[6] where, as here, an express agreement governs the relationship between the parties. *See Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 993 (4th Cir. 1990). Nonetheless, the Fourth Circuit has allowed recovery in quasi-contract under ERISA. In *Waller*, the court found that such a remedy was available to a plan administrator seeking to recover funds advanced to a plan participant. *Id.* Recovery was appropriate because (i) the common law remedy would effectuate the intent of the parties as set forth in the plan contract; (ii) the remedy was consistent with ERISA § 403(c)(2)(A), which "indicates a desire to ensure that plan funds are administered equitably and that no one party, not even plan beneficiaries, should unjustly profit;" and (iii) the facts of the case "fit the archetypal unjust enrichment scenario." 906 F.2d at 993. That is, the plaintiff showed that it "(1) had a reasonable expectation of payment, (2) the

---

[6] A quasi-contract is an equitable claim for unjust enrichment related to *quantum meruit* claims. *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 993-94 (4th Cir. 1990).

5

defendant should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment." 906 F.2d at 993-94.

However, the Fourth Circuit has also cautioned that "[t]he use of a federal common law theory claim of unjust enrichment in *Waller* . . . was clearly the exception and not the rule for ERISA cases." *Elmore*, 187 F.3d at 449. Moreover, it has called *Waller* into "serious doubt," because the court failed to consider the plan administrator's remedy under § 502(a)(3). *Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413, 423-24 (4th Cir. 2005). Similarly, the Fourth Circuit has declined to follow *Waller* where the insured could pursue a claim (albeit meritless) under ERISA's civil enforcement provision. *Rego v. Westvaco Corp*, 319 F.3d 140, 148 (4th Cir. 2003). In so doing, the court determined that no quasi-contractual remedy is available in "actions for which ERISA already creates remedies," 319 F.3d at 148, because such cases "present[] no gap in ERISA that requires an interstitial fix." *Id.*

*Rego* and *Cohen* provide the rule for this case. Plaintiff cannot recover the plan benefits under a quasi-contractual theory because § 502(a) already provides a means of recovering any benefits to which she is entitled. Moreover, unlike in *Waller*, granting the remedy that Plaintiff seeks would not honor the intent of the parties as set forth in their written agreement, but would instead effectively re-write that agreement. ERISA does not permit such a result. *Coleman*, 969 F.2d at 58.

### C.

Plaintiff argues that principles of equitable estoppel bar Defendants from denying the existence of a contract or quasi-contract. However, equitable estoppel is generally unavailable under ERISA. As noted, an ERISA plan must be set forth in a written instrument that describes the formal procedures for amendment. 29 U.S.C. §§ 1102(a)(1) - 1102(b)(3). Thus, equitable

estoppel cannot be used to bring about the modification of plan requirements. *See Coleman*, 969 F.2d at 58 (4th Cir. 1992); *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir.1992) (stating that it is inappropriate to develop the federal common law in ERISA cases where the effect would be "to override the explicit terms of an established ERISA benefit plan.").

In *Elmore v. Cone Mills Corp.*, the Fourth Circuit, sitting *en banc*, recognized that equitable estoppel may be available despite the existence of an ERISA plan. 23 F.3d at 863. The evenly divided court held that an employer's representations concerning benefits, which were made prior to the formal enactment of the plan, could be enforced even though the plan adopted ultimately did not provide for such benefits. *Id.* Four judges emphasized that ordinary concerns about "backdoor" modification of ERISA plans were inapplicable, because no plan existed at the time the representations were made. 23 F.3d at 868 (Murnahgan, J., concurring). Three other judges concluded that equitable estoppel should only be available in the case of "*pre-plan* statements which constituted *misrepresentations.*" 23 F.3d at 875 (Niemeyer, J., concurring in part) (emphasis added). Similarly, some circuits have limited the availability of equitable estoppel to cases of misrepresentation of plan benefits. *See e.g., Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir.1994); *Lee v. Burkhart*, 991 F.2d 1004, 1009-10 (2d Cir.1993). Other courts have held that equitable estoppel is available where the terms of an ERISA plan are ambiguous or unclear. *See Bowerman v. Wal-Mart Stores, Inc.*, 226 F. 3d 574, 586-588 (7th Cir. 2000); *Nat'l Cos. Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, Inc.*, 929 F.2d 1558, 1571-72 (11th Cir.1991); *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1286 (11th Cir.1990).

Therefore, all relevant considerations compel the conclusion that equitable estoppel is not available in this case. Unlike in *Elmore*, the representations giving rise to the claim were made

well after the adoption of an acknowledged ERISA plan. *Cf. Elmore*, 23 F.3d at 868, 875.

Furthermore, accepting Plaintiff's claim would override the explicit eligibility requirements of the MetLife Plan. *See Singer*, 964 F.2d at 145. In addition, Plaintiff cannot claim any ambiguity or misrepresentation in the plan documents, as the Summary Plan Description plainly discloses that "[i]f, while insured, you become totally disabled . . . your life insurance coverage will end." Furthermore, the Confirmation Statement did not contradict any of the plan documents, as it did not guarantee Mr. Moon coverage even if he failed to meet the plan's eligibility requirements.

Defendants' acceptance of premium payments does not change the analysis. *See White v. Provident Life & Accident Ins. Co.*, 114 F.3d 26, 29 (4th Cir. 1997); *McCravy*, 2011 WL 1833873, at *5. As in this case, the plaintiff in *McCravy* sought to recover life insurance benefits following the death of a family member, who had become ineligible for coverage under the express terms of an ERISA-governed group life insurance plan. Despite the lapse in coverage, the plaintiff continued to make, and the insurance company continued to accept, premium payments. There, as here, the insured could have converted her policy to an individual policy, but failed to do so. In rejecting the plaintiff's equitable estoppel claim, the court reasoned that:

> Contrary to the Summary Plan Description, McCravy did not apply for any individual policy by contacting MetLife within 31 days . . . . McCravy attributes this nonfeasance to MetLife's failure to make her aware that her dependent ceased to be eligible for coverage. Be that as it may, to estop MetLife from denying conversion coverage, we would have to treat the application requirement as waived. But to do so would allow a prohibited modification of the terms of the plan.

2011 WL 1833873, at *5. Furthermore, the court concluded that the plan's clear preclusion of coverage made it impossible for plaintiff to show reasonable reliance on the defendant's misrepresentations. *Id.* That reasoning applies with equal force here.[7]

---

[7] Plaintiff contends that this case is distinguishable from *McCravy*, because here, the insured had ceased being an employee at the time the alleged misrepresentation of coverage occurred. But this distinction is not meaningful.

## D.

Although it is not clear from the complaint, Plaintiff's claim for breach of fiduciary duty appears to arise under ERISA §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) and (a)(3). To the extent Plaintiff seeks to recover plan benefits under § 502(a)(2), her claim must fail. Section 502(a)(2) "authorizes . . . beneficiaries . . . to bring actions on behalf of a plan to recover for violations of obligations defined in [29 U.S.C. § 1109]." *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 253 (2008). "The principal statutory duties imposed on fiduciaries by that section 'relate to the proper management, administration, and investment of fund assets,' with an eye toward ensuring that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries." *Id.* (emphasis added) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985)).

Section 502(a)(2) only allows a plan participant or beneficiary to recover for duties owed to the plan itself. *Estate of Spinner v. Anthem Health Plans of Va.*, 589 F. Supp. 2d 738, 745 (W.D. Va. 2008), *aff'd* 388 F. App'x 275 (4th Cir. 2010). Thus, while an individual might recover for fiduciary breaches "that impair the value of plan assets in a participant's individual account," he may not recover "for individual injuries, distinct from plan injuries . . . ." *LaRue*, 552 U.S. at 256 (2008). Nor may a plaintiff "convert what is essentially a claim to recover individual benefits into a proper claim under [§ 502](a)(2)," by the formulaic invocation of the statute. *Spinner*, 388 F. App'x at 282. Indeed, a request for individual benefits allegedly due under the terms of a plan is the "the quintessential example of relief that is *not* available under section 502(a)(2)." *Coyne & Delany Co. v. Blue Cross & Blue Shield*, 102 F.3d 712, 714-15 (4th Cir. 1996).

---

Allowing Plaintiff's claim to proceed would effect a waiver of plan conditions, which is impermissible under ERISA. See *McCravy*, 2011 WL 18833873, at *5.

Furthermore, Plaintiff may not recover plan benefits as "other appropriate equitable relief" for breach of fiduciary duty under § 502(a)(3), because the relief sought is not equitable in nature. "A claim for money due and owing under a contract is quintessentially an action at law. Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' . . . the classic form of legal relief. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quotations omitted).

Section 502(a)(3) does not permit Plaintiff to demand specific performance of the alleged agreement between the parties. Generally, "specific performance of a contract to pay money was not available in equity." 534 U.S. at 211. Courts of equity could decree specific performance of a contract "to prevent future losses that either were incalculable or would be greater than the sum awarded" in contract damages, for instance, in a suit to enforce a loan obligation where alternative financing was not available. *Great-West*, 534 U.S. at 210. However, this is not such a case. Nor does § 502(a)(3) allow the Plaintiff recover plan benefits in restitution. In *Great-West*, the Supreme Court explained that restitution may be either legal or equitable in nature.

> In cases in which the plaintiff could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution at law through an action derived from the common-law writ of assumpsit. In such cases, the plaintiff's claim was considered legal because he sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money. Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).

*Great-West*, 534 U.S. at 213 (quotations and citations omitted). *See also McCravy*, 2011 WL 1833873, at *3. In summary, Plaintiff cannot recover what are in essence contract damages under § 502(a)(3) by characterizing the relief sought as an equitable claim for specific

performance, restitution, or some other remedy. To the extent the complaint demands such relief, it must be dismissed.

Plaintiff also seeks "restitution against those assets of the defendants into which the Moon payments can be traced . . . ." Am. Compl. As the record has not been fully developed on this issue, I decline to address it.

### III.

For the foregoing reasons, Defendants' motion will be granted.

The Clerk of the Court is directed to send a certified copy of this opinion to all counsel of record.

Entered this 7th day of July, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE