# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| JUDY L. MOON, ET AL., *Plaintiff,* | CASE NO. 6:09-cv-00064 |
| v. | MEMORANDUM OPINION |
| BWX TECHNOLOGIES, INC., ET AL., *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, as well as Plaintiff's Motion for Leave to File a Second Amended Complaint. On July 7, 2011, I dismissed Plaintiff's first amended complaint, and Plaintiff appealed to the Fourth Circuit. The Fourth Circuit affirmed that decision in part and vacated in part, remanding the case back to this court. Since then, Defendants have filed a supplemental brief in support of their motion to dismiss, and Plaintiff has filed a motion for leave to file a second amended complaint. For the following reasons, I will deny Plaintiff's motion for leave to file a second amended complaint, and grant Defendants' motion to dismiss Plaintiff's first amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## I. BACKGROUND

This case represents Plaintiff's attempt to recover insurance benefits that Defendants allegedly owe her on account of her deceased husband ("Mr. Moon"), a former employee of Babcock & Wilcox Company and Babcock & Wilcox Power Generation Group, Inc.[1] Mr. Moon had been a full-time employee of BWX and its predecessor companies from 1969 until June

---

[1] Both are predecessor companies to defendant BWX Technologies, Inc. ("BWX"), which is a subsidiary of defendant McDermott International, Inc. ("McDermott").

1

2005. Beginning on June 1, 2005, Mr. Moon became medically unable to continue working due to a severe heart condition, and began receiving short-term disability benefits from Defendants, lasting for six months. Mr. Moon eventually applied for long-term disability, and his application was approved on December 1, 2005. A confirmation statement issued only days before that approval verified that Mr. Moon, while still an employee at BWX, had opted for an employee life insurance plan ("Plan") issued by Metropolitan Life Insurance Company ("MetLife") for 2006, valued at $200,000.[2] The Plan was an ERISA-qualified life insurance plan for BWX employees, and it was administered by MetLife. On December 1, 2005, Mr. Moon officially retired from employment with BWX.

Soon after, on January 13, 2006, BWX mailed Mr. Moon an alleged offer to provide certain ongoing benefits in exchange for payments. That offer, identified as the "2006 Confirmation Statement" by the Fourth Circuit, indicated that Mr. Moon had previously selected a variety of benefits that were to be effective on January 2, 2006. Among those benefits was the $200,000 life insurance benefit, at an annual employee coverage cost of $804. The 2006 Confirmation Statement stated that the total annual cost of benefits, including long-term disability, vision, and personal accident insurance, was $3,269.76.

Over the course of that year, Mr. Moon and his family paid some, but not all of the premiums set forth in the 2006 Confirmation Statement. Payments were made directly to BWX. Mr. Moon passed away on November 18, 2006. On November 29, 2006, Plaintiff sent a letter to BWX and enclosed a check for $1,173.36, which represented the entire balance due on her deceased husband's benefits.

---

[2] It is unclear exactly when in 2005 Mr. Moon made his selections, though it was at some point prior to November 29, 2005, the date on which BWX confirmed Mr. Moon's selected coverage.

Plaintiff then made a claim directly to BWX requesting payment of the $200,000 life insurance benefit. BWX sent a reply by letter, stating that Mr. Moon had lost his employee group life insurance benefit when he became unable to work, and that he failed to convert his group employee policy with MetLife after he ceased working, as was required by the Plan.[3] Plaintiff filed suit in state court, and upon removal, I found that Plaintiff's claim regarding the 2006 Confirmation Statement/offer was in substance an attempt to recover under the ERISA-governed MetLife Plan. Plaintiff then filed an amended complaint containing four counts: (1) "breach of contract," (2) "breach of implied or quasi-contract," (3) "estoppel," and (4) "negligent breach of ERISA duties." I dismissed each of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). The Fourth Circuit affirmed that decision in part, while vacating the dismissal of Plaintiff's claims for recovery based on estoppel and negligent breach of ERISA duties in light of the recent decisions *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011) ("*Amara*"), and *McCravy v. Metropolitan Life Insurance Co.*, 690 F.3d 176 (4th Cir. 2012) ("*McCravy II*"). *See Moon v. BWX Technologies, Inc.*, 498 F. App'x 268, 276 (4th Cir. 2012).

On remand, on February 12, 2013, Defendants filed a supplemental memorandum in support of its motion to dismiss Plaintiff's first amended complaint. On March 15th, Plaintiff filed a motion for leave to file a second amended complaint, which would amend Counts One and Two of her first amended complaint.

## II. LEGAL STANDARD

### A. Plaintiff's Motion to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that once certain deadlines have passed, as they have here, "a party may amend its pleading only with the opposing party's

---

[3] In that April 12, 2007 letter, in conclusion, BWX stated the following: "At this time, we can find no evidence that Mr. Moon converted his active employee life insurance benefit to that of a disabled employee. Therefore, regrettably, there is no life insurance coverage for Mr. Moon." Docket No. 23-1 at 10.

written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave should be freely given "when justice so requires." *Id.* Indeed, leave to amend a pleading should be denied only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999).

### B. Defendants' Motion to Dismiss

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true, and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court is not required to "accept the legal conclusions drawn from the facts," or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted).

### III. DISCUSSION

### A. Plaintiff's Motion to Amend

In her motion, Plaintiff requests permission to amend Counts One and Two of her first amended complaint to address the equitable remedies considered in *Amara* and *McCravy II*. With respect to Count One, Plaintiff moves for permission to request relief under the equitable

remedy of reformation. With respect to Count Two, Plaintiff moves for permission to request relief under a surcharge remedy. In support, Plaintiff states that the proposed amendments do not raise new substantive issues, and nor do they assert claims against new parties. Instead, according to Plaintiff, the amendments only seek to readdress her previous claims in the remedial forms expressly adopted by higher courts.

The Fourth Circuit specifically instructed this court "to address anew [Plaintiff's] claims of equitable estoppel and breach of fiduciary duty in light of *Amara* and *McCravy II*." *Moon*, 498 F. App'x at 276. Defendants note that the Fourth Circuit was aware of the existence of reformation and surcharge as potential remedies for ERISA plaintiffs, but was silent as to those remedies when it remanded this case.[4] Furthermore, Plaintiff's second amended complaint would, in effect, revive two counts for which the Fourth Circuit has affirmed dismissal.[5]

Still, given the Fourth Circuit's citation to *Amara* and *McCravy II*, I will consider the merits of Plaintiff's proposed amendments, along with her remanded claims for equitable estoppel and breach of fiduciary duty. In Count One of her proposed second amended complaint, Plaintiff requests that the court reform the 2006 Confirmation Statement into an enforceable contract. Specifically, Plaintiff contends that, "[h]aving made a post-employment offer of life insurance benefits to Mr. Moon in January 2006 which was accepted through the receipt and acceptance of plaintiffs' premium payments . . . . [T]his Court should reform the

---

[4] The Fourth Circuit noted that *Amara* has "clarified that remedies beyond mere refunds—including the surcharge and equitable estoppel remedies . . . are indeed available to ERISA plaintiffs suing fiduciaries under Section 1132(a)(3)." *Moon*, 498 F. App'x at 275 (quoting *McCravy II*, 690 F.3d at 182–83). The Supreme Court decided *Amara* on May 16, 2011, a month before I heard oral arguments on Defendants' first motion to dismiss, and nearly two months before I issued my previous memorandum opinion in this case.

[5] Regarding Count One (Breach of Contract) and Count Two (Breach of Implied or Quasi-Contract) of Plaintiff's first amended complaint, the Fourth Circuit held that "[b]ecause Mr. Moon was clearly never eligible for benefits under the Plan during 2006, Appellant cannot recover under the Plan's plain terms." *Moon*, 498 F. App'x at 275. However, regarding Count Three and Count Four, the Fourth Circuit concluded that "[t]he merits of Appellant's equitable estoppel and breach of fiduciary claims are less clear." *Id.*

agreement between the parties to require these [Defendants] to honor their obligation to plaintiff to pay her $200,000 as a result of the death of Mr. Moon in 2006." Pl.'s Proposed 2d Am. Compl. ¶¶ 42, 42a. (Docket No. 78-1).

After *Amara*, it is clear that reformation is an equitable remedy available to some ERISA plaintiffs. In *Amara*, the employee-plaintiffs filed a class action against an employer and pension plan, claiming that the employer had misled them about the benefits of converting their defined benefit retirement plan into a "cash balance" plan. 131 S. Ct. at 1874–75. The trial court agreed, and reformed the plan under ERISA's recovery-of-benefits-due provision, § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which authorizes beneficiaries to sue to the enforce the terms of a plan. *Id.* at 1875. The Supreme Court remanded the case, holding that the plaintiffs' claim should instead be brought as a request for equitable relief under § 502(a)(3), 29 U.S.C. § 1132(a)(3). *Id.* at 1876–78. The Court discussed several equitable remedies available to the plaintiffs on remand, including reformation. *Id.* at 1879–80.

However, a contract may be reformed only on grounds of (1) mutual mistake, or (2) unilateral mistake plus fraudulent conduct. *See Larchmont Properties v. Cooperman*, 195 Va. 784, 791, 80 S.E.2d 733, 737 (1954). In *Amara*, the district court specifically found that the defendant had intentionally misled the employees, and it reformed the terms of the new plan. 131 S. Ct. at 1874–75. Conversely, Plaintiff has failed to sufficiently allege any type of fraudulent conduct (or a "deliberate nondisclosure designed to prevent another from learning the truth") in her proposed second amended complaint. *See Van Deusen v. Snead*, 247 Va. 324, 328, 441 S.E.2d 207, 209–10 (Va. 1994).

Plaintiff does allege that "the defendants," through the 2006 Confirmation Statement and their acceptance of payments, "either negligently or intentionally, misrepresented unto Mr. Moon

and plaintiffs that their 2006 payments to BWXT would include all the specified benefits, including the life insurance benefits." Pl.'s Proposed 2d Am. Compl. ¶ 27. Regarding that 2006 Confirmation Statement (among other documents), the Fourth Circuit found the following: "Far from indicating an independent, post-employment contract for benefits, the documents on which [Plaintiff] relies all plainly demonstrate that her claims stem from nothing more than Mr. Moon's enrollment in a run-of-the-mill employee benefit plan weeks before his retirement." *Moon*, 498 F. App'x at 274. The court continued that it was "undisputed that life insurance coverage under the Plan continued only while the employee remained in 'Active Work,'" and noted the "straightforward language" relating this fact in the Summary Plan Description. *Id.* at 274–75. On remand, I find that the 2006 Confirmation Statement, which confirmed Mr. Moon's earlier benefit selections, cannot be used to support an allegation of fraud in this case.

Furthermore, reformation under § 502(a)(3), 29 U.S.C. § 1132(a)(3) is an equitable remedy that lies only against a plan fiduciary.[6] In *Amara*, the Supreme Court specifically found that the case before it concerned "a suit by a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan (which ERISA typically treats as a trust) . . . ." *Id.* at 1879. Given that this was "the kind of lawsuit, that before the merger of law and equity, [ ] could have [been] only in a court of equity," the Court in *Amara* found that several traditional equitable remedies (including "reformation of the terms of the plan") were available to the plaintiffs in that case. *Id.*

For the reasons discussed *infra*, none of the Defendants were acting as fiduciaries when they performed the allegedly wrongful acts giving rise to this action. Regarding Plaintiff's proposed amendments to Count Two ("Surcharge for Breach of Fiduciary Duty"), surcharge in

---

[6] Plaintiff contends that "the defendants herein as ERISA fiduciaries should be obligated on their contract or agreement made with Mr. Moon to provide him or his heirs $200,000 of life insurance coverage for year 2006." Pl.'s Proposed 2d Am. Compl. ¶ 42.

this context is a remedy that lies only against fiduciaries as well. *Id.* at 1880 ("The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.").[7] Thus, Plaintiff's motion for leave to file a second amended complaint must be denied, because her requests for reformation (Count One) and surcharge (Count Two) in her proposed amendments are futile.

**B. Defendants' Motion to Dismiss**

As discussed, Mr. Moon ceased any involvement in active work with BWX when he retired on December 1, 2005, at least one month before the disputed MetLife Plan coverage purportedly went into effect. Accordingly, the Fourth Circuit held that "[b]ecause Mr. Moon was clearly never eligible for benefits under the Plan during 2006, [Plaintiff] cannot recover under the Plan's plain terms. *Moon*, 498 F. App'x at 275. However, the Fourth Circuit remanded this case "to permit the district court to address anew [Plaintiff's] claims of equitable estoppel and breach of fiduciary duty in light of *Amara* and *McCravy II*." *Id.* at 276.

1. Plaintiff's Breach of Fiduciary Duty Claim

Plaintiff's claim for breach of fiduciary duty fails because none of the defendants were acting as fiduciaries under the MetLife Plan, with respect to the allegations in this case. "Before one can conclude that a fiduciary duty has been violated, it must be established that the party charged with the breach meets the statutory definition of 'fiduciary.'" *Adams v. The Brink's Co.*, 420 F. Supp. 2d 523, 551 (W.D. Va. 2006) *aff'd*, 261 F. App'x 583 (4th Cir. 2008) (quoting

---

[7] Regarding surcharge, the Supreme Court reasoned that "the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief . . . . [Given that] [e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from the trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id.* at 1880 (citations omitted). Likewise, in *McCravy II*, the Fourth Circuit concluded that because surcharge was an available remedy under ERISA § 502(a)(3), the plaintiff's recovery in that case was not limited to the premiums she had paid on her daughter's life insurance plan. 690 F.3d at 181. The court remanded to determine whether surcharge was appropriate under the circumstances of the case. *Id.* at 181–82.

*Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60–61 (4th Cir. 1992)). Under ERISA, a person is a fiduciary:

> to the extent that (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 343 (4th Cir. 2007) (quoting 29 U.S.C. § 1002(21)(A)). "The definition is couched in terms of functional control and authority over the plan, thus necessitating that courts 'examine the conduct at issue when determining whether an individual is an ERISA fiduciary.'" *Id.* (quoting *Hamilton v. Carell*, 244 F.3d 992, 998 (6th Cir. 2001)).[8]

In this case, Plaintiff bases her breach of fiduciary duty claim on Defendants' acceptance of Mr. Moon's payments over the course of 2006, and their failure to notify Mr. Moon that he was no longer eligible for life insurance benefits (given that he had ceased being an employee by the end of 2005). *See* Pl.'s Am. Compl. ¶ 34 (Docket No. 52) ("[D]efendants had a duty to Mr. Moon to truthfully and accurately advise Mr. Moon if he was ineligible for life insurance benefits within a reasonable time after receiving monthly payments from Mr. Moon for said benefits . . . ."). Thus, Plaintiff can maintain her breach of fiduciary duty claim only if accepting payments and advising participants about their eligibility for employee benefits are discretionary acts under ERISA, meeting the statutory definition of "fiduciary."

---

[8] Under ERISA, an employer that establishes or maintains an employee benefit plan is a "sponsor." 29 U.S.C. § 1002(16)(B). However, "[t]he mere fact that an employer is a sponsor does not mean that the employer is also a fiduciary." *Healthtek Solutions, Inc. v. Fortis Benefits Ins. Co.*, 274 F. Supp. 2d 767, 775 (E.D. Va. 2003) (citing *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996)). A plan sponsor becomes a fiduciary only to the extent "it retains or exercises any discretionary authority over the management or administration of a plan." *Id.* (citation omitted). In this case, the life insurance carrier and claims administrator was MetLife, while the Plan sponsor and administrator was McDermott Incorporated. Docket no. 54-1 at 15 ("This benefit is administered by MetLife pursuant to a contract with the Plan Sponsor.").

Because accepting payments and advising participants about their eligibility do not qualify as discretionary acts, Plaintiff's breach of fiduciary duty claim cannot stand. Under the Department of Labor's (DOL) regulation titled "Questions and answers relating to fiduciary responsibility under the Employee Retirement Income Security Act of 1974", persons who do not have power to make decisions regarding ERISA plans, and only perform "administrative functions," are not fiduciaries under 29 U.S.C. § 1002(21)(A). 29 C.F.R. § 2509.75-8 (D-2). Included among the (non-fiduciary) administrative functions listed are the "collection of contributions" and "advising participants of their rights and options under the plan." *Id.* The regulation goes on to explain that a person who performs the type of functions described above (including "collection of contributions" and "advising participants of their rights and options under the plan") is not a fiduciary because "such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so." *Id.*

The Fourth Circuit's decision in *Estate of Weeks v. Advance Stores Co., Inc.*, 99 F. App'x 470 (4th Cir. 2004) provides a helpful illustration. In that case, an employee resigned from his employment with an automotive-parts distribution center. Under the terms of his medical plan, his medical coverage ended a week later if he failed to continue coverage within thirty-one days of his termination as an employee. Under his life insurance plan, the former employee ceased being covered on the same day of his resignation if he failed to continue coverage within the applicable period. *Id.* at 473–74. Days after leaving his position, the former employee suffered a relapse of leukemia. However, when his family contacted his former employer about his

benefits, a human resources manager told them (incorrectly) that all of his benefits had ceased on his last day of employment, and failed to mention the continuation option under the health and life insurance plans. *Id.* at 473. The former employee died a few months later, and his family brought suit in another court in this district, contending that the defendants breached their fiduciary duties by misinforming the family that the former employee was not entitled to any continuation of his benefits. *Id.* at 474.

Judge Wilson concluded that the human resource manager's job activities did not bring her within ERISA's definition of a fiduciary, and entered summary judgment in favor of the defendants. The Fourth Circuit affirmed, concluding that the human resource manager "did not have any discretionary authority or control over the manner in which employee plans were managed and administered." *Id.* at 476. The mere fact that she (incorrectly) answered questions about the former employee's benefits did not transform her into a fiduciary, as it was her duty only to relay information given to her by upper-management or from the company's computer database. *Id.* at 476–77 ("Our inquiry [into whether a person qualifies as an ERISA fiduciary] solely focuses on whether that person actually exercised any discretionary authority over the management and administration of the plan in question.").[9]

In the present case, Plaintiff alleges that Defendants had a duty to inform Mr. Moon about his lack of life insurance coverage when they accepted his payments over the course of 2006. According to Plaintiff, the failure to provide that information constituted a breach of Defendants' fiduciary duty. However, the cited DOL regulation clearly states that the "collection of contributions" and "advising participants of their rights and options under the

---

[9] The court also noted that the plaintiffs could have corrected any of the manager's misstatements simply by going through the medical and life insurance plan documents that had been provided to the former employee. *Id.* at 477. Similarly, in this case, both the MetLife Plan and the Summary Plan Description (*see* Docket Nos. 54-1, 2) are clear that life insurance benefits end upon the cessation of active employment.

plan" are administrative, rather than discretionary, acts. *See* 29 C.F.R. § 2509.75-8 (D-2). Because Plaintiff has failed to establish Defendants' fiduciary status with respect to the particular activities at issue in this case, *see Coleman*, 969 F.2d at 61, her breach of fiduciary duty claim must be denied.

2. Plaintiff's Equitable Estoppel Claim

Because Plaintiff cannot show that Defendants were fiduciaries in this case, Plaintiff cannot recover under a theory of equitable estoppel either. Along with reformation and surcharge, the Supreme Court cited equitable estoppel as a potential equitable remedy available to the *Amara* beneficiaries. *See McCravy II*, 690 F.3d at 181 ("In sum, the portion of *Amara* in which the Supreme Court addressed Section 1132(a)(3) stands for the proposition that remedies traditionally available in courts of equity, expressly including estoppel and surcharge, are indeed available to plaintiffs suing fiduciaries under Section 1132(a)(3)."). The Fourth Circuit emphasized that "estoppel is 'a traditional equitable remedy'—*i.e.*, a remedy available to plaintiffs suing a fiduciary under Section 1132(a)(3)." *Id.* at 182 (quoting *Amara*, 131 S. Ct. at 1880).

In order to assert a claim for equitable estoppel, Plaintiff must identify some basis for equity jurisdiction. *See Drexel v. Berney*, 122 U.S. 241, 253 (1887) ("[I]t is necessary to show some ground of equity other than the estoppel itself . . . ."). If Plaintiff cannot show any independent ground for equity jurisdiction, her § 1132(a)(3) claim must fail as a matter of law. In both *Amara* and *McCravy II*, the jurisdictional basis for plaintiffs' equitable claim was the defendants' status as plan fiduciaries. *See Amara*, 131 S. Ct. at 1869; *McCravy II*, 690 F.3d at 182–83. Likewise, Plaintiff contends that Defendants are plan fiduciaries in this case, and Plaintiff should be able to proceed on her claim for equitable estoppel relief. In support, Plaintiff

notes in her brief in opposition that 29 C.F.R. § 2509.75-8 states that a plan agent or employee that "has the final authority to authorize or disallow benefit payments in cases where a dispute exists" qualifies as an ERISA fiduciary. Plaintiff contends that, due to the letter that BWX sent on April 12, 2007, Defendants effectively handled and denied Plaintiff's claim.[10]

However, Defendants alleged "handling and denial" of Plaintiff's claim has nothing to do with their silent acceptance of Mr. Moon's payments, which is the action that Plaintiff contends constituted the breach of fiduciary duty in this case. Again, according to the Fourth Circuit, "a party is a fiduciary [under ERISA] only as to the activities which bring the person within the definition." *Coleman*, 969 F.2d at 61. The alleged breach of fiduciary duty in this case occurred when Defendants accepted payments without informing Mr. Moon that he was no longer eligible for life insurance benefits, rather than due to the April 12, 2007 letter that BWX sent. Specifically, Plaintiff alleges that, "[a]s fiduciaries under ERISA for such Plan, defendants had a duty to Mr. Moon to truthfully and accurate advise Mr. Moon if he was ineligible for life insurance benefits within a reasonable time after receiving monthly payments from Mr. Moon for said benefits . . . ." Pl.'s Am. Compl. ¶ 34. Plaintiff alleges that the Defendants "negligently or intentionally breached the duty they owed to Mr. Moon under ERISA to advise him of his ineligibility for life insurance benefits and their conduct, in fact, caused Mr. Moon to believe he had procured said benefits." *Id.* at ¶ 36. As discussed, "advising participants of their rights and options under the plan" and the "collection of contributions" are not fiduciary actions under § 1002(21)(A).

---

[10] While courts have found that in some § 1132(a)(3) actions a defendant's fiduciary status makes no difference, *see Trustees ex rel. N. Cal. Gen. Teamsters Sec. Fund v. Fresno Bread Bakery, Inc.*, 2012 WL 3062174 (E.D. Cal. July 25, 2012), this is not a case where the defendant "actively and deliberately misleads the plaintiff to the plaintiff's detriment." *Id.* at *4 (quoting *Northwest Adm'rs, Inc. v. Cutter*, 328 F. App'x 577, 578 (9th Cir. 2009)) (equitable restitution available for medical benefits paid for woman whom defendant misrepresented as his wife).

It is important to note that defendants can, at least in some respects, be fiduciaries without being named as an administrator in plan documents. *See Wilmington Shipping*, 496 F.3d at 343 ("[F]iduciary status under ERISA is not an all-or-nothing concept.") (citation and internal quotations omitted). Furthermore, "an individual or entity can still be found liable as a 'de facto' fiduciary if it lacks formal power to control or manage a plan yet exercises informally the requisite 'discretionary control' over plan management and administration . . . ." *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101–02 (9th Cir. 2004). Still, "[a] defendant's fiduciary status under ERISA may be decided on a motion to dismiss." *Carr v. Int'l Game Tech.*, 770 F. Supp. 2d 1080, 1088 (D. Nev. 2011) (citing *Wright*, 360 F.3d at 1101–02).[11] Indeed, "Fourth Circuit decisions strongly support the conclusion that [ ] plaintiffs must do more than quote the statutory language regarding 'discretionary control' to plead adequately that a given defendant is a de facto ERISA fiduciary." *In re Mutual Funds Inv. Litig.*, 403 F. Supp. 2d 434, 446 (D. Md. 2005) (discussing *Custer v. Sweeney*, 89 F.3d 1156 (4th Cir. 1996)).

As discussed, Defendants were not acting as fiduciaries in this case, given the breach of duty that Plaintiff alleged in her first amended complaint. Furthermore, Defendants in this case neither possessed nor exercised any authority to administer the MetLife Plan, or resolve any disputes regarding Plan benefits. As the Plan and Summary Plan Description make clear, sole responsibility for processing claims lies with MetLife, which is not a party to this suit. *See* Docket No. 54-1 at 9–10.[12] Those documents also state that if an employee's coverage ends due

---

[11] In *Wright*, the Ninth Circuit agreed with the district court's finding that the defendants were neither fiduciaries nor de facto fiduciaries under an employee pension plan, and affirmed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of plaintiffs' claims. 360 F.3d at 1103.

[12] In contrast, the district court in *Amara* found CIGNA, the defendant-employer, to be the plan administrator and proper fiduciary in that case. 131 S. Ct. at 1876. In *Musmeci v. Schwegmann Giant Super Mkts., Inc.*, 332 F.3d 339 (5th Cir. 2003), which Plaintiff cites, the employer similarly had clear authority to dispose of claims under the benefit plan. *Id.* at 349–50 (finding that the defendant-employer was both plan administrator and plan sponsor, as

14

to the cessation of employment, he must apply within thirty-one days to continue his life insurance coverage through a personal policy with MetLife. Docket No. 54-1 at 10. The April 12, 2007 "denial" to which Plaintiff refers in her opposition—and cites as additional grounds for Defendants' fiduciary status in her proposed second amended complaint—was merely a letter from BWX's Human Resources department informing Plaintiff's counsel that, more than a year past Mr. Moon's deadline to apply for continued coverage, there was no existing policy upon which Plaintiff could rely to submit a claim to MetLife. *See* Doc. No. 23-1 at 9–10.

Because Defendants were not acting as fiduciaries in this case, Plaintiff's proposed amendments seeking reformation and surcharge remedies are futile. Similarly, Plaintiff's breach of fiduciary duty and equitable estoppel claims on remand must fail.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File a Second Amended Complaint is DENIED. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint is GRANTED. An appropriate order accompanies this memorandum opinion.

The clerk of the court is hereby directed to send a certified copy of this memorandum opinion to all counsel of record.

Entered this 9th day of July, 2013.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

the plan had no meaningful existence separate from the employer since the plan was funded by the employer's owner, and the employer made the decision to terminate the plan.).